**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 8, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JENITA CLANCY,

     Plaintiff - Appellant,

v.

CHRISTOPHER C. MILLER[*], Acting
Secretary of Defense,

     Defendant - Appellee.

No. 20-3036
(D.C. No. 5:18-CV-04106-SAC)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[**]
_____

Before **TYMKOVICH**, Chief Judge, **MURPHY** and **PHILLIPS**, Circuit Judges.
_____

Pro se plaintiff Jenita Clancy started working for the Defense Commissary

Agency at Fort Riley in November 2015. In the summer and fall of 2016, she

received negative performance evaluations. And in November 2016, she resigned

---

[*] We have substituted Christopher C. Miller, the current acting Secretary of Defense, for Mark T. Esper, the former Secretary of Defense. *See* Fed. R. App. P. 43(c)(2).

[**] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

after a meeting with her supervisors. She later unsuccessfully tried to withdraw her resignation.

Clancy filed this lawsuit just over a year later, claiming under the Rehabilitation Act, 29 U.S.C. § 794, that her supervisors at Fort Riley discriminated against her and subjected her to a hostile work environment because of her disability—anxiety, depression, and post-traumatic stress disorder (PTSD). The district court granted summary judgment to the defense.

In this appeal, Clancy challenges the summary judgment and several other rulings the district court made along the way. We construe her pro se pleadings liberally, without going so far that we act as her advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Seeing no error, we affirm.

## I. Discretionary Rulings

Clancy argues that the district court erred when it (1) denied her leave to amend her complaint, (2) excluded her exhibits under local rules, and (3) denied her leave to file a surreply opposing summary judgment. We review these rulings for an abuse of discretion. *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 989 (10th Cir. 2019) (leave to amend); *Certain Underwriters at Lloyd's London v. Garmin Int'l, Inc.*, 781 F.3d 1226, 1230 (10th Cir. 2015) (applying local rules); *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005) (surreply). "A district court abuses its discretion if its decision is arbitrary, capricious, whimsical, or manifestly unreasonable." *Tesone*, 942 F.3d at 989 (internal quotation marks omitted).

### A. Motion to Amend the Complaint

In May 2019, after the deadlines for discovery and motions to amend had passed, Clancy sought to add claims for retaliation and constructive discharge under Title VII of the Civil Rights Act of 1964. She explained that she realized in March 2019 that she could not bring some of her claims under the Rehabilitation Act, and she sought to correct her mistake by adding claims under Title VII. The district court denied the motion, finding that allowing the amendment would require more discovery and that Clancy did not offer a persuasive reason to allow the amendment.

District courts should freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). But a "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). In this context, good cause exists if the movant cannot meet the schedule's deadlines despite diligent efforts. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). "A party seeking leave to amend after a scheduling order deadline must satisfy both the Rule 16(b) and Rule 15(a) standards." *Tesone*, 942 F.3d at 989. If the moving party fails to satisfy either standard, then the district court does not abuse its discretion by denying leave to amend. *Id.*

We cannot say that the district court abused its discretion. Clancy's oversight does not amount to good cause. *See Gorsuch*, 771 F.3d at 1240 ("If the plaintiff knew of the underlying conduct but simply failed to raise tort claims, however, the claims are barred."). True, as Clancy highlights, she mentioned Title VII, retaliation, and constructive discharge in earlier pleadings. But that fact does not persuade us

3

that the district court erred; as the district court implied, that fact may hurt Clancy's cause because it suggests that she could have understood the law and followed court rules. And pro se litigants must follow the same procedural rules as other litigants. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994). We recognize that Clancy does not think an amendment would have required more discovery, but the court's finding is supported by the defense's statement that it would have sought another deposition and another expert evaluation if the court had allowed the amendment.

## B. Excluding Exhibits

After the defense moved for summary judgment, Clancy sent the district court clerk a box that apparently contained her medical records from 2013 onward. The district court directed the clerk not to file the exhibits unless Clancy sought and received leave to file them under a local rule. Clancy responded by asking permission to file the exhibits, pointing out that the magistrate judge had granted her motion to file conventionally records that were too large to file electronically. Her response did not, however, explain the relevance of the exhibits. The district court entered an order explaining that the magistrate judge's "order did not concern the [current] situation," that Clancy had not shown "that the record should be cluttered with more than a thousand pages of medical records," that the exhibits would not be filed without leave, and that any motion seeking leave should explain the exhibits' relevance to summary judgment. Suppl. R. at 76. After this order—and after the court had granted summary judgment—Clancy again sought permission to file the

4

exhibits, insisting that the "medical records are absolutely necessary" but failing to describe the information in them. *Id.* at 82. The court denied her request.

Under the district court's local rules, "[b]ulky or voluminous materials should not be filed in their entirety . . . unless the court finds the materials essential and grants leave to file them. The court may strike any pleading or paper filed in violation of this rule." D. Kan. Rule 5.1(f). This rule supports the district court's decision to exclude Clancy's exhibits until she sought and received leave to file them. The court did not abuse its discretion. *See Certain Underwriters*, 781 F.3d at 1230–31 (finding the court acted within its discretion when it rejected 700 pages of exhibits that did not comply with local rules).

In addition to arguing that the district court improperly excluded her exhibits, Clancy seeks to add them to the appellate record. "We undoubtedly have discretion to deny a motion to supplement the record on appeal when the materials sought to be added to the record were never before the district court." *Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 862–63 (10th Cir. 2015). We exercise that discretion here and deny Clancy's motion, because the exhibits' contents would not affect our analysis. The district court did not exclude the exhibits based on their contents; it excluded them because Clancy did not seek and obtain leave to file them. Because Clancy did not describe to the district court what the exhibits say or explain how they relate to the case, we could not fault the district court's decision no matter the exhibits' actual contents. And having concluded that the district court acted within its discretion

when it excluded the exhibits, "we will not now consider [them] on appeal." *Certain Underwriters*, 781 F.3d at 1230.

## C. The Surreply

Three days after the district court granted summary judgment, Clancy moved for more time to file a surreply. The district court denied the motion, in part because Clancy did not offer grounds supporting her request.

Courts should generally allow the nonmoving party to respond to material—whether evidence or argument—that the movant raises for the first time in a reply. *Green*, 420 F.3d at 1196. If a court does not rely on the new material, however, then "it does not abuse its discretion by precluding a surreply." *Id.* (internal quotation marks omitted).

The defense's reply included exhibits related to Clancy's claims that she told her supervisors about her mental-health conditions and that her employment records identified her as having a psychiatric disability. The district court assumed these claims to be true in its summary-judgment analysis. So it did not rely on any new material in the reply in granting summary judgment, and it did not abuse its discretion by precluding a surreply. *See id.* Still, we will grant Clancy's motion to add her surreply to the record and consider it as we review the summary judgment, rendering harmless any possible error in precluding the surreply.

## II. Summary Judgment

We review de novo a district court's decision to grant summary judgment, applying the same standard governing the district court. *Rivero v. Bd. of Regents of*

*Univ. of N.M.*, 950 F.3d 754, 758 (10th Cir. 2020). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We view all facts and evidence in the light most favorable to the party opposing summary judgment." *Craft Smith, LLC v. EC Design, LLC*, 969 F.3d 1092, 1099 (10th Cir. 2020) (internal quotation marks omitted).

"The Rehabilitation Act prohibits the federal government from discriminating against an 'otherwise qualified individual with a disability.'" *Sanchez v. Vilsack*, 695 F.3d 1174, 1177 (10th Cir. 2012) (quoting 29 U.S.C. § 794(a)). The Rehabilitation Act incorporates the employment-discrimination standards in the Americans with Disabilities Act (ADA), *see* 29 U.S.C. § 794(d), so cases addressing ADA claims may inform our analysis, *see Rivero*, 950 F.3d at 758.

Clancy's discrimination and hostile-work-environment claims require her to show that she is a "qualified individual with a disability." 29 U.S.C. § 794(a).[1] "When the claim is for discrimination based on an actual disability, the plaintiff must show 'a physical or mental impairment that substantially limits one or more major life activities.'" *Tesone*, 942 F.3d at 995 (quoting 42 U.S.C. § 12102(1)(A)).[2] Major

---

[1] We assume that Clancy may bring a hostile-work-environment claim under the Rehabilitation Act.

[2] A person can also establish a disability by showing a "record of such an impairment" or that he or she is "regarded as having such an impairment." 42 U.S.C. §§ 12102(1)(B), (C). At least at one point in the district court, Clancy claimed to have both an actual disability and a record of one. She appears only to pursue her claim of an actual disability on appeal, abandoning any claim based on a record of a disability. In any event, Clancy has not identified any competent evidence showing

7

life activities include, for example, brain function, sleeping, "reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2).

A plaintiff may show a disability through expert testimony. *Tesone*, 942 F.3d at 996. Indeed, some cases require expert testimony: "where injuries complained of are of such character as to require skilled and professional persons to determine the cause and extent thereof, they must be proved by the testimony of medical experts." *Id.* at 997 (internal quotation marks omitted). But not every case requires expert testimony: "when a plaintiff alleges an impairment that a lay jury can fathom without expert guidance, courts generally do not require medical evidence to establish an ADA disability." *Id.* (internal quotation marks omitted).

Clancy submitted a letter from Dr. Richard Mulrenin, dated more than a year after she resigned from Fort Riley. The letter says that she had been diagnosed with major depressive disorder and PTSD, with "distressing symptoms including depressed moods, acute anxiety, occasional suicidal ideation and a marked difficulty concentrating." R. vol. 1 at 25. The letter added that financial stress during the preceding year had exacerbated her symptoms. Dr. Mulrenin's progress notes from October 7, 2015, about a month before Clancy's first day on the job, removed her PTSD diagnosis and opined that she did not meet the criteria for major depression. Clancy ultimately told the court, however, that she would not present any expert testimony. The district court concluded that, without expert testimony, she could not

---

that the disability listed in her employment records substantially limited a major life activity.

8

prove that her depression, anxiety, and PTSD substantially limited at least one major life activity while she worked at Fort Riley.

We agree with the district court. As a lay witness, Clancy could describe her symptoms—for example, that she has difficulty concentrating. *See Felkins v. City of Lakewood*, 774 F.3d 647, 652 (10th Cir. 2014). She could not, however, "diagnose her condition . . . or state how that condition causes limitations on major life activities, for those are clearly matters beyond the realm of common experience and require the special skill and knowledge of an expert witness." *Id.* (ellipsis and internal quotation marks omitted). Without expert testimony to diagnose her condition while she worked at Fort Riley, and further to link the diagnosis to a limitation on a major life activity, Clancy did not offer enough evidence to create a genuine dispute over whether she had an actual disability.

Because Clancy could not show an actual disability, we need not consider the district court's additional reasons for granting summary judgment.

### III. Costs

The district court ordered that the defense could recover costs from Clancy and that she could recover nothing. Clancy does not explain, and we do not see, why the court erred by awarding costs to the defense as the prevailing party under Fed. R. Civ. P. 54(d)(1). She does, however, assert that she should have received a remedy under Fed. R. Civ. P. 56(h) because the defense submitted declarations in bad faith. But she does not claim to have requested that remedy in the district court, and our review of the record uncovered no such request. We do not consider this new

9

claim.  *See Tele-Commc'ns, Inc. v. Comm'r*, 104 F.3d 1229, 1232 (10th Cir. 1997) ("Generally, an appellate court will not consider an issue raised for the first time on appeal.").

## IV.  Conclusion

Clancy's motion to supplement the record is granted in part (as to her surreply) and denied in part (as to the exhibits).  The district court's judgment is affirmed.

Entered for the Court


Gregory A. Phillips
Circuit Judge

10